IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL LANE | § | |
| v. | § | CIVIL ACTION NO. 6:17cv504 |
| DIRECTOR, TDCJ-CID | § | |

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT</u>

The Petitioner Michael Lane, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of a classification and housing change during his confinement in the Texas Department of Criminal Justice, Correctional Institutions Division. This Court referred the matter to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Lane's Claims**

In his petition, Lane states that he is classified as a "3g" prisoner [i.e. serving an aggravated sentence or convicted of one of a list of violent crimes] and thus had to serve 10 years before being eligible for a promotion to minimum custody (G2), from medium custody (G3). In December of 2012, he was moved to minimum custody.

On September 2, 2016, however, he was reclassified back down to medium custody. He was told this was done pursuant to what Lane describes as "a repealed and deleted legislative bill, to-wit SB-341." The prison officials would not give him a copy of the bill, but told him it had been passed in 1987. Lane argues that he has met the prison's requirements as well as the requirements of the Texas Government Code and should be allowed to remain in minimum custody.

1

According to Lane, other similarly situated prisoners are allowed to remain in minimum custody. He contends that he is a "writ writer" and has provided legal advice to numerous other inmates.

Lane states that he is being classified under the "Life Without Parole" sentence guidelines even though he was not sentenced to life without parole. As a result, he complains that he is prohibited from seeking rehabilitation or a safer housing area, and he has been provided with no paperwork or documents to justify this decision. He did receive a response to a Step Two grievance, which reads as follows:

> A review of your Step One grievance has been conducted and you were appropriately advised at the unit level. Due to Legislature's passing SB341, calculation of stacked sentences changed from cumulative totaling of all sentences to requiring inmates to serve them consecutively with separate parole review for each sentence. TDCJ Administration determined that offenders who must serve a minimum of 60 years flat before they are eligible for release are serving the consecutive equivalent of life without parole and LWOP offenders should remain in G-3 custody throughout the duration of their incarceration. Due to your two life sentences your G-3 custody is appropriate. No further action is warranted.

## II. The Report of the Magistrate Judge

After review of the pleadings, the Magistrate Judge issued a Report recommending that Lane's petition be denied. The Magistrate Judge observed that Lane is serving two consecutive life sentences for aggravated sexual assault of a child, and as such, he must serve 60 years before becoming eligible for parole.

The Magistrate Judge stated that in July of 2005, TDCJ-CID implemented a regulation providing that prisoners sentenced to life without parole cannot be placed in minimum custody, but can be promoted to higher than G3 medium custody. According to the response to Lane's grievance, the prison administration considers him to be serving the equivalent of life without parole because he must serve 60 calendar years before becoming eligible for parole. Because he is serving the functional equivalent of life without parole, he is not eligible for minimum custody.

The Magistrate Judge determined that as a general rule, prisoners do not have a liberty interest in their custodial classification, although a narrow exception exists where the challenged

classification amounts to an atypical and significant hardship in relation to the ordinary incidents of prison life. The Magistrate Judge stated that requiring Lane to remain in medium custody did not amount to an atypical or significant hardship and did not implicate any constitutionally protected liberty interests.

The Magistrate Judge further stated that the fact that Lane was not formally sentenced to "life without parole" did not deprive him of any protected liberty interest in the fact that the prison treats his sentence as the functional equivalent of life without parole. The on-line records of TDCJ show that Lane was 41 years old when he received two consecutive life sentences, meaning he will be eligible for parole when he is 101 years old.

Although Lane complained that similarly situated prisoners are permitted to have minimum custody status, the Magistrate Judge noted that Lane did not identify any such persons. Thus, the Magistrate Judge concluded that Lane had not set out a viable equal protection claim.

Finally, the Magistrate Judge determined that Lane's complaint concerning lack of access to rehabilitation programs did not deprive him of a protected liberty interest because prisoners have no constitutionally protected rights or liberty interests in prison rehabilitation programs and the fact that he cannot get into the housing he prefers or the programs he seeks is not an atypical or significant hardship in relation to the ordinary incidents of prison life. Because Lane failed to show the deprivation of any protected liberty interests, the Magistrate Judge concluded that his claims for habeas corpus relief lacked merit.

### III. Lane's Objections

In his objections to the Magistrate Judge's Report, Lane argues first that he has been subjected to a violation of the Double Jeopardy Clause because when he was originally placed in TDCJ, he had to serve 10 calendar years in order to become eligible for promotion to minimum custody, but this was later changed. He states that SB-341 has been "depleted [sic] and is no longer legislative or active law." He also complains that he has been subjected to an *ex post facto* violation because the Director is treating his sentence as greater than what he received in his criminal trial.

He also contends that "only one of Lane's sentences is before the Director at this time. To enforce both sentence, the Director is required to credit Lane for time served under this violation of law. Thereby causing the sentences to run concurrent."

The Fifth Circuit has held that a change in custodial status does not amount to an increase in the measure of punishment for purposes of the *Ex Post Facto* Clause, nor does it qualify as a second punishment for purposes of the Double Jeopardy Clause. *Welch v. Epps*, 103 F.App'x 828, 2004 WL 1690139 (5th Cir., July 26, 2004), *citing Garner v. Jones*, 529 U.S. 244, 249-50, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) *and Hudson v. United States*, 522 U.S. 93, 98-99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *see also United States v. Galan*, 82 F.3d 639, 640 (5th Cir. 1996). Lane does not explain his assertion that the Director is required to treat his sentences as running concurrently. His objection on this point is without merit.

Lane next complains that he retains some rights under the Equal Protection Clause but the Magistrate Judge did not give him an evidentiary hearing, he could not provide the names of similarly situated prisoners allowed minimum custody. He identifies a prisoner named Leslie George Cantrell whom he says has two consecutive life sentences, but is nonetheless in minimum custody.

The on-line records of TDCJ-CID do not show that Cantrell is serving consecutive life sentences. Lane's maximum sentence date is recorded as "life sentence - *cumulative offenses*," while Cantrell's maximum sentence date is recorded as "life sentence." The phrase "cumulative offenses," which is absent from Cantrell's record, indicates that Lane's sentences are consecutive rather than concurrent. *See* Tex. Penal Code art. 3.03. Lane has not shown that Cantrell or any other inmate is similarly situated to him yet has been allowed a promotion to minimum custody, and thus has failed to demonstrate an equal protection violation. Nor has Lane demonstrated entitlement to an evidentiary hearing. *See Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996). This objection is without merit.

Lane complains that the Magistrate Judge made no findings that his reclassification was the result of a disciplinary case or bad behavior. The reclassification was not punishment; in fact, the Magistrate Judge concluded that Lane had been reclassified based on a policy providing that prisoners sentenced to life without parole were not eligible for promotion to minimum custody, and a sentence of two consecutive life terms was the functional equivalent of life without parole. Texas law grants Lane no protected liberty or property interest in his classification status regardless of whether Senate Bill 341 has been repealed or modified. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (no protected liberty interest in custodial classification).

Nor does the fact that Lane cannot be promoted to minimum custody, live in the housing area he prefers, or have access to all of the rehabilitation programs he wants implicate a liberty interest; the Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration. *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977). This objection is without merit.

Finally, Lane complains that the Magistrate Judge "answered Lane's writ application without Lane's permission or consent," adding that "Lane did not sign consent to have the magistrate resolve the writ." The case was referred to the Magistrate Judge for preliminary matters in accordance with 28 U.S.C. §636(b). No consent is required for such a referral. *Newsome v. EEOC*, 301 F.3d 227, 230 (5th Cir. 2002). This objection is without merit. Because Lane has failed to show the violation of a protected liberty interest, he cannot obtain habeas corpus relief. *Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007); *Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007).

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review,

5

the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Petitioner's objections are overruled and the Report of the Magistrate Judge (docket no. 10) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled application for the writ of habeas corpus is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Petitioner Michael Lane is **DENIED** a certificate of appealability *sua sponte*. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED.**

**So Ordered and Signed**
**Mar 28, 2018**

_____
Ron Clark, United States District Judge